IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TYLER DAGON,<br>Plaintiff,<br><br>v.<br><br>BNSF RAILWAY COMPANY,<br>Defendant.<br><br>―――――――――――――――<br>BNSF RAILWAY COMPANY,<br>Third-Party Plaintiff,<br><br>v.<br><br>UNITED STATES STEEL<br>CORPORATION,<br>Third-Party Defendant. | Case No. 19–CV–00417–JPG |

## **MEMORANDUM & ORDER**

This is a negligence suit arising from the death of Timothy Dagon ("decedent"). Plaintiff Tyler Dagon ("Estate") seeks to depose a representative from Defendant BNSF Railway Company ("BNSF") about, among other things, BNSF's internal safety policies. BNSF contends that the policies are irrelevant to this action, so it filed a Motion for Protective Order to Quash Rule 30(b)(6) Deposition Notice ("Motion to Quash"). (ECF No. 97). The Estate responded, (ECF No. 99), and BNSF replied, (ECF No. 100). For the reasons below, the Court **DENIES** BNSF's Motion.

I.  PROCEDURAL & FACTUAL HISTORY

In 2019, the decedent was crushed by a BNSF-owned railcar while working for Third-Party Defendant United States Steel Corporation ("U.S. Steel") at its railyard in Granite City, Illinois. The Estate sued both BNSF and U.S. Steel and raised a common-law negligence claim (against

BNSF) and statutory claims under the Federal Employers Liability Act ("FELA") (against both defendants).

In July 2020, the Court dismissed the FELA claims after finding, among other things, that there was not an employment relationship between the decedent and BNSF. Put differently, the Court found that BNSF did not owe Dagon a <u>special</u> duty of care because there was not an employment relationship.

Only the negligence claim remains. The Estate argues that BNSF "[n]egligently and carelessly failed to have a comprehensive safety program" and "failed to properly instruct [the decedent] in safe and proper procedures for getting on and off equipment during switching and other railroad procedures when BNSF knew, or should have known with the existence of ordinary care, that such activities involved an unreasonable risk of harm to [the decedent] . . . ." (Compl. at 9). More specifically, the Estate suggests that BNSF maintains internal policies for getting on and off moving equipment (or "GOOME") yet did nothing to ensure that their equipment was safely used by third parties. In other words, the Estate contends that BNSF violated the <u>ordinary</u> duty to act as a reasonably prudent person under the circumstances.

With that in mind, the Estate gave notice of its intent to depose BNSF about the following:

(1) BNSF's policy for getting on and off moving equipment;

(2) The reasons for BNSF's GOOME policy;

(3) Studies done or commissioned by BNSF regarding GOOME;

(4) Injuries known by BNSF associated with GOOME;

(5) Deaths known by BNSF associated with GOOME;

(6) Use of BNSF rail cars by non-BNSF entities;

(7) Efforts by BNSF to enforce rules and policy followed by non-BNSF entities;

    (8)    Training that non-BNSF entities require before they are allowed to use railcars;

    (9)    All written agreements between BNSF and U.S. Steel regarding U.S. Steel's use of BNSF railcars;

    (10)    Ownership of the rail car involved in the occurrence;

    (11)    Warnings posted on the rail car involved in the occurrence; and

    (12)    Facts supporting affirmative defenses.

BNSF moved to quash the deposition notice. It says that questions about its internal policies are irrelevant given the Court's ruling that BNSF was not Dagon's employer. The Estate, on the other hand, contends that the questions go precisely toward their theory of the case: That BNSF was negligent for failing "to train Dagon, his co-workers and his supervisors in safety rules and procedures that would have prevented the Incident" and for not "enforce[ing] safety rules and procedures that would have prevented the incident."

## II.   LAW & ANALYSIS

"Parties may obtain discovery regarding any nonprivileged matter that is **relevant** to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden and expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1) (emphasis added). **Relevance** is broadly defined to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

"A party who wants to depose a person by oral questions must give reasonable written notice to every other party" and "describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(1), (6). "Before or promptly after the notice . . . is served, the serving party and the organization must confer in good faith about the matters for examination." Fed. R. Civ. P. 30(b)(6). If the parties reach an impasse and cannot "resolve the dispute without court action," then "[t]he court may, for good cause, issue an order to protect a party . . . from . . . undue burden or expense" by "forbidding inquiry into certain matters . . . ." Fed. R. Civ. P. 26(c)(1)(D).

> "Good cause" is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury. . . . [T]he courts have recognized several general factors applicable to all protective orders. These include:
>
> - The danger of abuse if a protective order is granted;
> - The good faith of the various parties' positions;
> - The adequacy of the protective measures provided by a protective order; and
> - The availability of other means of proof.

6 James Wm. Moore et al., Moore's Federal Practice § 26.104 (3d ed. 2020); *see Nieves v. Opa, Inc.*, 948 F. Supp. 2d 887, 891 (N.D. Ill. 2013) ("Specific factual demonstrations are required to establish that a particular discovery request is improper and that good cause exists for issuing the order.").

Regardless of the merits of the Estate's negligence claim, its theory is relevant and advanced in good faith. The Estate's position revolves around BNSF's training and safety measures, so questions about its policies could bear on whether it could have reasonably foreseen that someone could get injured while using its equipment, even if that person works for a third

party. At this stage of the case, the Court rejects BNSF's invitation to weigh in on the merits of the Estate's theory: As BNSF never moved for dismissal on these grounds, the Estate should have a chance to conduct discovery about whether BNSF was negligent for not promulgating new safety rules or enforcing existing ones. Further, the Estate raises a concern about whether BNSF conferred in good faith:

> BNSF's counsel stated that if Plaintiff could not commit to foregoing the deposition, BNSF could not agree to furnish additional written discovery responses. Thus, at this stage of the litigation, BNSF's Answer is denying allegation in Plaintiff's Complaint, and BNSF is refusing to tender a corporate representative to testify on these allegations, and BNSF has not furnished any written discovery responses that would obviate the need for this testimony.

(Estate's Resp. at 6). Given that BNSF does not refute this assertion in its briefs, it provides added reason to deny its Motion.

### III.   CONCLUSION

The Court **DENIES** Defendant BNSF Railway Company's Motion for Protective Order to Quash Rule 30(b)(6) Deposition Notice.

**IT IS SO ORDERED.**

**Dated: Tuesday, March 2, 2021**

<u>S/J. Phil Gilbert</u>
**J. PHIL GILBERT
UNITED STATES DISTRICT JUDGE**