UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

Tyler Dagon, as Administrator of the Estate of
Timothy Dagon, deceased,

      Plaintiff,

        v.

BNSF RAILWAY COMPANY, Defendant,
and UNITED STATES STEEL
CORPORATION, Third-Party Defendant.

Case No. 3:19-cv-00417-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant BNSF Railway Company's ("BNSF")

Motion for Summary Judgement pursuant to Federal Rule of Civil Procedure 56. Defendant BSNF

moves to dismiss the remaining [1] negligence causes of action set forth in Count II and III.

## I.    Factual Background

This is a personal injury case arising from the death of Timothy Dagon ("decedent").

Plaintiff Tyler Dagon ("Plaintiff" or "Estate") alleges that BNSF and United States Steel

Corporation ("U.S. Steel"), are liable for common-law negligence and negligence pursuant to the

Survival Act and Wrongful Death Act. (Comp. at ¶¶ 45-52).

Plaintiff seeks to recover for the death of decedent, who was a switchman employed by

defendant U.S. Steel Corporation ("U.S. Steel"). BNSF is a common carrier Class I interstate

railroad, and U.S. Steel is a corporation that owns and operates a steel plant in Granite Cit, Illinois.

(Compl. at ¶¶ 4, 9). BNSF would deliver railcars to the plant through Terminal Railroad

Association of St. Louis ("TRA"), who would then deliver the railcar to the U.S. Steel gate. (Doc.

---

[1] In a Memorandum and Order dated July 21, 2020, the Court dismissed Counts I and IV Federal Employers' Liability
Act ("FELA") claims after finding there was not an employment relationship between decedent and BNSF. (Doc. 84).

132 at 5). Between BNSF and U.S. Steel. they shared a "Confidential Quote" which refers to BNSF Rules Book 6100 Series. (Doc. 132 at 4-5).

The accident at issue occurred on March 5, 2017, in Granite City, IL. (Compl. at ¶ 11). Decedent was an employee of U.S. Steel, who worked as a switchman in the rail department at the U.S. Steel Granite City plant. (Doc. 122 at 3). BNSF owned the railcar that decedent boarded or attempted to board and U.S. Steel was a customer of BNSF. (Doc. 122 at 9). Decedent was crushed by a BNSF-owned railcar while working for U.S. Steel. A video of the incident shows that decedent appeared to be a person riding on the side of a train and fell or jumped from the train and went underneath the railcar. *Id*. at ¶ 25. Decedent suffered a crush injury to his leg and was taken by U.S. Steel Fire and Rescue and loaded into a helicopter to SLU Medical Center where he died four hours later. *Id*. at ¶¶ 28-33. His son, Tyler Dagon, brings this lawsuit on behalf of decedent.

This case centers around the harm related to employees getting on and off moving equipment ("GOOME"). Currently, railroads have changed their GOOME rules at various times and currently railroads within the industry has GOOME rules that differ from each other. (Doc. 122 at 6) (Andres Dep., at 38-41, Doc. 122, Ex. L). At the time of decedent's accident, U.S. Steel's Standard Safety Practices ("SSPs") and Safe Job Practices ("SJPs") prohibited employees from GOOME. *Id*. After this accident, OSHA issued a citation against U.S. Steel for this incident related to GOOME enforcement. (Doc. 132-1).

On March 5, 2019, Plaintiff filed its complaint in Madison County, Illinois, alleging claims under FELA and common law Negligence. (Doc. 1-2). Defendants BNSF and U.S. Steel removed this case to federal court. (Doc. 1). The Court later dismissed the FELA claim and only the common law negligence claims remain. (Doc. 84).

## II.  Law & Analysis

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Spath v. Hayes Wheels Int'l–Ind., Inc*., 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). Thus, the Court construes evidence and draws all reasonable inferences in favor of Plaintiff. On summary judgment a court may not make credibility determinations or weigh the evidence, because these are tasks for a factfinder. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986); *Betaco, Inc. v. Cessna Aircraft Co*., 32 F.3d 1126, 1138 (7th Cir. 1994). In evaluating a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp*., 24 F.3d 918, 920 (7th Cir. 1994).

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the nonmoving party carries the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways. It may present evidence that affirmatively negates an essential element of the nonmoving party's case, *see* Fed. R. Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of the nonmoving party's case without actually submitting any evidence, *see* Fed. R. Civ. P. 56(c)(1)(B); *Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169. Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing

party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252. Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion. *Hutchison v. Fitzgerald Equip. Co.*, Inc., 910 F.3d 1016, 1023 (7th Cir. 2018).

### a. Allegations

First, the parties dispute what types of allegations are at issue. Defendant BNSF asserts that the Plaintiff's bases of the case rests in paragraph 42 of the complaint where Plaintiff asserts BNSF failed to promulgate and enforce safety rules prohibiting GOOME for U.S. Steel employees and failed to train U.S. Steel employees and supervisors on GOOME. (*See* Doc. 122 at 3-4; Comp, ¶ 42(d), (f) and (g)). Plaintiff disagrees and states their bases of negligence are more expansive and include allegations that it was foreseeable BNSF's negligent acts would cause injury to decedent using BNSF equipment while providing services to BNSF, Compl. at ¶ 46, BNSF invited decedent "to work on its premises created a duty" to use reasonable care to not injure decedent, *id.* at ¶ 48, BNSF failed to provide decedent reasonably safe place to work when BNSF knew decedent did

not appreciate or recognize the danger, *id*. ¶ 49(a), BNSF failed to refrain from unreasonably dangerous active conduct, *id*. ¶ 49(b), BNSF failed to have comprehensive safety program to eliminate hazards and warn persons at U.S. Steel of hazards, or have an inspection program to discovery hazards, *id*. at ¶ 49(c), and BNSF failed to properly instruct decedent on safe proper GOOME procedures, *id*. ¶ 49(d).

However, the crux of Plaintiff's complaint revolves around the following duties, which the Court will evaluate whether or not should be imposed on BNSF: duty to supervise regarding rules enforcing GOOME prohibition and train U.S. Steel employees regarding GOOME prohibition, and duty to warn regarding risks of GOOME, including a failure to provide anti-slip material.

**b. Duty to Supervise and Train**

The essential elements of common law negligence in Illinois are: (1) the existence of a duty running from the defendant to the plaintiff; (2) a breach of that duty; (3) an injury proximately caused by the breach of duty. *Pavlik v. Wal–Mart Stores, Inc*., 323 Ill.App.3d 1060, 1063, 257 Ill.Dec. 381, 753 N.E.2d 1007, 1010 (2001) (internal quotes omitted). "In order to recover on a negligence claim, plaintiff must set out sufficient facts to establish that the defendant owed a duty to plaintiff, that defendant breached that duty, and that the breach proximately caused injury to plaintiff." *Grillo v. Yeager Constr*., 387 Ill.App.3d 577, 326 Ill.Dec. 1002, 900 N.E.2d 1249, 1251 (citations omitted).

The existence of duty is considered a question of law to be determined by the court. *Id*. In Illinois, an affirmative duty to aid or protect another against an unreasonable risk of physical harm arises only in the context of a legally recognized "special relationship." *Simpkins v. CSX Transportation, Inc*., 2012 IL 110662, ¶ 19, 358 Ill.Dec. 613, 965 N.E.2d 1092; *Iseberg v. Gross*, 227 Ill.2d 78, 87–88, 316 Ill.Dec. 211, 879 N.E.2d 278 (2007).  Courts have recognized four

5

"special relationships"—common carrier-passenger, innkeeper—guest, business invitor-invitee, and voluntary custodian-protectee. *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Directors*, 2012 IL 112479, 973 N.E.2d 880, 888 (citing Restatement (Second) of Torts § 314A (1965)).

Outside of these recognized exceptions, a court reviews factors to determine whether or not a duty exists based on a foreseeable risk of injury. The factors for a court to consider in examining the existence of a duty include: the reasonable foreseeability of injury; the likelihood of injury; the magnitude of the burden to guard against it; and the consequences of placing blame on the defendant ("*Simpkins* factors"). *Simpkins*, 2012 IL 110662, ¶ 18, 965 N.E.2d 1092, 1097. The existence of a duty in any given "case is a question of law for the court to decide" and "involves considerations of public policy." *Id*. at 617–18, 965 N.E.2d at 1096–97. BNSF argues Plaintiff alleges no "special exception," and therefore an analysis of the four *Simpkins* factors demonstrates that no duty is owed.

"Though foreseeability is not the only factor we consider, it is a necessary factor to finding a duty. If the injury was not reasonably foreseeable, no duty can exist." *Simpkins*, 2012 IL 110662, ¶ 24, 965 N.E.2d 1092, 1098. Because "with the benefit of hindsight, everything is foreseeable" the court must focus on whether the "injury was reasonably foreseeable at the time defendant engaged in the alleged negligent action." *Id*. at ¶ 25. The concept of foreseeability is limited, and to be foreseeable, something must be reasonable to expect objectively. The fact "[t]hat something 'might conceivably occur,' does not make it foreseeable." *Jarosz v. Buona Companies, LLC*, 2022 IL App (1st) 210181, ¶ 37 (internal citations omitted). BNSF argues that it owed no duty to decedent whereas Plaintiff argues BNSF owed a duty because its conduct created a foreseeable risk of injury. (Doc. 122 at 14-15; Doc. 132 at 11-12).

The question, pursuant to the first *Simpkins* factor, is whether or not there was a foreseeable

risk of injury for BNSF's failure to supervise or train U.S. Steel employees, namely the decedent. The Court finds Plaintiff's theory is far too attenuated. Viewing the evidence in the record in the light most favorable to Plaintiff, and providing all reasonable inferences in favor of Plaintiff, the Court finds it is not reasonably foreseeable that BNSF declining to train or supervise decedent on GOOME, a U.S. Steel employee, would cause harm to the employee. U.S. Steel was the only entity that trained and supervised decedent regarding its rules prohibiting GOOME. This Court will not impose a duty on a non-employer to train and supervise regarding GOOME procedures that both parties agree is "not in lockstep" with the rest of the industry or where there is inconsistent prohibition on GOOME. *See* Doc. 132 at 13-14.

BNSF argues that it was not reasonably foreseeable that declining to train or supervise on GOOME prohibitions, U.S. Steel rail employees would cause harm to those employees. (Doc. 122 at 15); Compl. at ¶ 42(d), (f) and (g). BNSF's argument centers around the fact U.S. Steel, as decedent's employer, is the proper entity to train and supervise decedent, which it in fact did. (*See generally*, Doc. 122 at 15). Plaintiff argues this is incorrect and puts forth evidence to contradict BNSF's claim. Specifically, Plaintiff puts forth the testimony of Dr. Robert Andres, Plaintiff's liability expert, who stated the following: Doc. 122-13, p. 24 ("BNSF was obviously aware of the risks involved with GOOME and prohibited the practice to avoid an unreasonable risk of injury or death to its employees. However, BNSF did not provide warnings directly to USSC or indirectly by placing any kind of warning on the BNSF railcars involved in this incident."); *id*., p. 25 ("BNSF was aware of the potential for injury when trainmen are allowed to GOOME but did nothing to transfer their knowledge to their customer USSC."); *id*., p. 18 (citing statistics known to the American Association of Railroads as early as 1987 that a significant percentage of injuries "involve losing hold or footing while climbing or riding on the ladder."); Doc. 122-14, Andres

dep. at 31:20-32:14 (it is well known that sill steps are slippery and are not made to be slip resistant).

Plaintiff argues BNSF prohibited its own employees from GOOME, and knew it was dangerous, and yet did nothing to prohibit U.S. Steel employees from GOOME. However, this Court finds it is not reasonable to require BNSF to train U.S. Steel employees, an entirely different entity.[2] BNSF argues it was therefore not reasonably foreseeable the decedent would "deliberately violate known safety procedures implemented for his protection." (Doc. 122 at 15). Even if BNSF was "obviously aware" of the risks involved with GOOME, which it may have believed so because it prohibited its own employees from GOOME, Plaintiff has been unable to persuade this Court that it was reasonably foreseeable to BNSF that harm would result to U.S. Steel employees for its failure to do so.

Specifically, BNSF argues that it was further not foreseeable that harm would result from GOOME because U.S. Steel had safety rules prohibiting GOOME and it was decedent who violated the prohibition against GOOME. (Doc. 122 at 7). Plaintiff argues that whether U.S. Steel was *properly* enforcing the prohibition against GOOME is in dispute. The Court does not find this dispute to be material to the issue of duty to supervise and train. It is not reasonable for BNSF to go into a U.S. Steel facility and premises and supervise and train U.S. Steel employees. Therefore, even if there is a dispute as to whether or not U.S. Steel did not adequately enforce discipline from GOOME, this dispute is not material as to whether or not it was reasonably foreseeable to BNSF that harm would occur to decedent if it did not train or supervise on GOOME. *See* Doc. 132 at 6.[3]

---

[2] Albeit in a different context, Illinois courts have evaluated that lack of control over an individual and the individual's work weighs against attaching negligence to that party because it is not in a good position to prevent negligent performance. *See Carney v. Union Pac. R. Co.*, 2016 IL 118984, ¶ 32, 77 N.E.3d 1, 7 ("Because the hiring entity has no control over the details and methods of the independent contractor's work, it is not in a good position to prevent negligent performance, and liability therefor should not attach.").

[3] Plaintiff also uses provides an OSHA violation, which cites U.S. Steel for failing to adequately enforce a prohibition on GOOME, as evidence that U.S. Steel did not enforce GOOME prohibition. (Doc. 132 at 6-7). However, an OSHA

Additionally, while Plaintiff provides evidence that U.S. Steel's efforts to prohibit GOOME were inadequate (Doc. 132 at 1-2), Plaintiff does not provide evidence that BNSF knew or what should have reasonably held accountable for knowing whether U.S. Steel enforcement was inadequate. *Simpkins*, 2012 IL 110662, ¶ 25, 965 N.E.2d 1092, 1099 ("what is considered reasonably foreseeable depends on what information about the nature of asbestos was known at the time of plaintiff's alleged exposure and, therefore, what information defendant could reasonably be held accountable for knowing."). Plaintiff's argument that BNSF should be charged with knowing or should know "persons would not appreciate the risk of GOOME," Doc. 132 at 13, is a stretch, and charges BNSF with potential liability with everyone who encounters a BNSF-owned train. The Court agrees with BNSF's concerns. Namely, Plaintiff's position would be wholly unworkable where not all railroads have the same GOOME rules, some railroads conflict with U.S. Steel rules, the open question regarding the role of third parties who transport the railcars, and the frequent interchange of car owners between different industries. The Court does not find it is reasonably foreseeable, with the facts provided regarding GOOME, that BNSF's failure to train or provide continuing supervision would cause harm to decedent.

Next, Plaintiff argues that BNSF failed to promulgate and enforce safety rules prohibiting U.S. Steel employees from GOOME. BNSF argues Plaintiff is incorrect and that BNSF does not "promulgate rules for industries using BNSF-owned railcars within the interchange system." (Doc. 122 at 9); (Doc. 132 at 8). Plaintiff points to a "Confidential Quote" by BNSF for U.S. Steel, which states "Transportation under this agreement is subject to BNSF Rules Book 6100-Series in effect

---

violation would generally not be admissible at trial for the purposes of proving negligence and a plaintiff cannot defeat a defendant's summary judgment motion relying on inadmissible evidence. *Carlisle v. Deere & Co.*, 576 F.3d 649, 655 (7th Cir. 2009); *see United States v. Pitt-Des Moines, Inc.*, 168 F.3d 976, 992 (7th Cir. 1999) (finding OSHA "serious" violation is not admissible because such a mini-trial on the OSHA violation could district and confuse the jury on the main issues of the case and probative value is limited). Additionally, this document and information only provides support U.S. Steel may not have been properly enforcing GOOME, and not that BNSF had knowledge of issues with enforcement of GOOME prohibition.

as of the date of shipment." (Doc. 122, Ex. 3). U.S. Steel corporate representative William
Bojaland testified and stated this quotation "refers to the rates BNSF charged U.S. Steel for its
transportation services." (Doc. 132 at 5). This corporate representative stated he did not know how
long 6100 series has been affecting what U.S. Steel does as far as transportation, "but there has
typically always been some form of condition of carriage that ties to these movements, whether
it's a contract tariff or exempt quotation." (Doc. 122, Ex. 7). This Court has already evaluated this
agreement and found in its previous Memorandum and Order, the following:

> The Rules Book is precisely the kind of cooperation required under U.S. Steel and BNSF's
> agreement. BNSF relied on U.S. Steel to properly load its railcars so it could safely
> transport them. And besides the loading rules, nothing in the record reveals that BNSF
> could direct, control, or supervise any U.S. Steel employee.

(Doc. 84, at p. 17). The Court found previously BNSF could not direct, control, or supervise a U.S.
Steel employee, albeit in an employer/employee context. Here, the Court does not find how the
language Plaintiff points to, or the agreements above require BNSF enforce rules regarding BNSF-
owned cars regarding GOOME. Both the Confidential Quote and the Rules Book identify rates
and commercial terms for "conditions of carriage" such as indicating the "shipper is responsible
for loading." Even providing Plaintiff all reasonable inferences, the Court does not see how the
documents allow a reasonable fact finder to infer that BNSF is required to supervise U.S. Steel
employees regarding GOOME.

Plaintiff also argues that the Rules Book has a quotation that requires BNSF impose rules
on U.S. Steel. Specifically, the Rules Book, which Plaintiff argues requires BNSF to impose rules
on U.S. Steel states "BNSF incorporates the AAR Loading Rules, Pamphlets and General
Information Series into our Loading Rules." (Doc 122, Ex. 8). Plaintiff argues that it was
foreseeable to BNSF that persons would not appreciate the risk of GOOME and additionally cited

BNSF's membership with Association of American Railroads[4] ("AAR") in its support. Plaintiff argues that the AAR conducted studies and cited statistics that GOOME causes a significant percentage of injuries. (Doc. 122-13, at 18). Therefore, Plaintiff argues that BNSF knew and should have known, through its association with AAR that GOOME would cause significant harm. Even providing reasonable inferences in favor of Plaintiff, Plaintiff is requiring this Court to make too many leaps and jumps to grant its argument. First, the AAR has conducted research and cited statistics regarding GOOME's harm, and Plaintiff does not point to an AAR Rule against GOOME, as the Rules Book states ("AAR Loading Rules"). Additionally, Plaintiff does not provide evidence how GOOME is a "Loading Rule." Thus, AAR statistics and studies do not play directly into the language of the Rules Book. In short, the inclusion of the AAR language does not show that the Rules Book somehow requires BNSF enforce GOOME rules on U.S. Steel.

Plaintiff's theory that duty should be imposed because it is reasonably foreseeable to BNSF that decedent, a U.S. Steel employee, would GOOME, in violation of U.S. Steel rules, requires this Court to create weak links between BNSF and U.S. Steel, which would, in turn, require BNSF to supervise and train employees of a different company than its own, regarding a practice that is allowed but prohibited by U.S. Steel. (Doc. 132 at 13). The Court finds there is no objectively foreseeable risk of injury for BNSF's failure to supervise or train U.S. Steel employees.

Regarding the second factor regarding the likelihood of injury, for many of the same reasons listed above, the Court believes there was not a substantial likelihood of decedent being injured. Regarding the third and fourth factors - magnitude of the burden of guarding against the injury and the consequences of placing that burden on BNSF – the Court finds that these factors weigh strongly in favor of BNSF. As stated above, the imposition of duty "involves considerations

---

[4] Plaintiff provides a provision of an agreement between BNSF and U.S. Steel which states ("BNSF incorporates the AAR Loading Rules, Pamphlets and General Information Series into our Loading Rules.").

of public policy." *Simpkins*, 617–18, 965 N.E.2d at 1096–97. Requiring a railroad owner to supervise and train entities who purchase the railcar regarding GOOME, is an imposition with a great burden. Additionally, the Court is concerned creating such a duty would require non-employers to supervise and train non-employees regarding rules and regulations other than GOOME. Adopting Plaintiff's position leaves this Court with unanswered questions. Would BNSF have to create continuing supervision and training regarding GOOME? Would it have to train and supervise U.S. Steel employees regarding other potentially dangerous conduct? What would qualify as dangerous conduct? Would such a non-employer have to train and supervise *other* entitles that come into contact with the railroad? Would BNSF have to train and supervise entities who do not have rules that prohibit GOOME? These questions demonstrate a slippery slope and a large burden on BNSF. Public policy weighs against the imposition of duty for BNSF to train and supervise U.S. Steel employees on GOOME prohibition.

Finally, case law on the issue regarding whether a manufacturer or a provider of goods (here, BNSF is a provider of railcars) has a duty to train authorized dealers (here, U.S. Steel) weighs in favor of BNSF. Two cases this Court was able to find within this circuit contradict Plaintiff's contention and indicate there is no duty to train authorized dealers. *Ramm v. W & D Mach. Co.*, No. 92 C 7478, 1994 WL 530827, at *2 (N.D. Ill. Sept. 29, 1994) (Illinois courts have never adopted the argument that a manufacturer has a duty to train its purchaser's employees); *Pessman v. Trek Bicycle Corp.*, No. 3:18-CV-50243, 2021 WL 5769530, at *8 (N.D. Ill. Dec. 6, 2021)("[P]laintiff has not cited, and the Court has been unable to find any case in Illinois recognizing that a manufacturer has a duty to train its authorized dealers"). Additionally, this Court does not find BNSF's course of action similar to others where courts have held a duty exists. *Jarosz v. Buona Companies, LLC,* 2022 IL App (1st) 210181, ¶ 37 (finding risk of tripping and falling

reasonably foreseeable where common experience shows tripping over objects is extraordinarily common in everyday life and the area and type of establishment had heavy foot traffic); *Cf Ineeka, Inc. v. Bond Corp.*, 2017 IL App (1st) 160631-U, ¶ 28 (finding risk of harm from fire not foreseeable where defendant had working fire alarm system and working sprinkler system and "pure speculation" presence of individual would foreseeability of injury); *Snow v. Power Constr. Co.*, LLC, 2017 IL App (1st) 151226, ¶ 67, 78 N.E.3d 587, 605 (finding because it is not customary for tradespersons not to move materials belonging to another contractor, it was not objectively reasonable for defendant to foresee plaintiff would attempt to move stacked drywall and become injured).

In short, Plaintiff asks this Court to impose a duty on a company to supervise and train another company regarding GOOME in the latter company's facility, where GOOME is allowed by some industries. The Court finds that, providing all reasonable inferences in favor of Plaintiff, and based on an analysis of the *Simpkins* factors, BNSF does not owe a duty to supervise and train to Plaintiff.

**c. Duty to Warn or Provide Anti-Slip Material**

The next duty the Court will evaluate is whether or not BNSF had a duty to warn decedent regarding the dangers of GOOME. Plaintiff argues that BNSF could have included a warning about GOOME or include some kind of slip-resistant material for the steps. (Doc. 132 at 13). According to Defendant, negligence claim based on a failure to warn of the dangerous propensities of a chattel is governed by section 388 of the Restatement (Second) of Torts, which states:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier:
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for

13

the use for which it is supplied, and

       (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

       (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

A duty to warn exists "where there is unequal knowledge, actual or constructive [of a dangerous condition], and the defendant possessed of such knowledge, knows or should know that harm might or could occur if no warning is given." *Hutchison v. Fitzgerald Equipment Company*, 910 F.3d 1016, 1022 (7th Cir. 2018). BNSF argues that decedent and U.S. Steel had full knowledge of the risk of GOOME and therefore there is no "unequal knowledge" that harm could occur if no warning was given. (Doc. 122 at 19). Specifically, the purpose of the warning is to "apprise someone of that which he has no knowledge" and therefore BNSF should have no duty to warn decedent. *Id*.

Here, unlike a failure train and supervise, the Court believes BNSF has not met its burden with this respect that it may have had a duty to include slip resistant material or put a warning on the railcar. Dr. Andres testifies that the sill steps are slippery and are not made to be slip resistant. (Doc. 122-14, Andres dep. at 31:20-32:1). Here, unlike an analysis of the factors above regarding a duty to train and supervise, the Court believes an analysis of the factors weighs in favor of Plaintiff regarding the anti-slip material.

First, regarding the reasonable foreseeability of the harm, the Court analyzed the reasonable foreseeability regarding imposition of duty to train and supervise U.S. Steel employees. However, the analysis of these factors weighs in favor of imposing a duty to warn. Here, it was reasonably foreseeable that a failure to convey knowledge of the risk or prevent of some risk through anti-slip pads of GOOME might result in *some* harm. Plaintiff introduces some evidence that a warning may be appropriate because Dr. Andres testified that BNSF had studied injuries

because of GOOME (around 232 employees injured through GOOME in 1990). (Doc. 122-13 at 18-20). Additionally, the Court agrees with Plaintiff that it would not be unduly burdensome for BNSF to require some sort of warning regarding GOOME or some kind of slip-resistant material for the steps. Specifically, BNSF does not discuss an analysis of the factors regarding the duty to warn or furnish anti-slip resistant material. Here, the third and fourth factors, and providing all reasonable inferences in favor of Plaintiff, the Court finds BNSF has not shown there is no genuine dispute regarding the duty to warn or duty to place anti-slip devices. Additionally, unless regarding the duty to supervise and train, here. imposing a duty to warn would not have interfered with the employer and employee relationship. *Happel v. Wal-Mart Stores, Inc.*, 199 Ill. 2d 179, 194, 766 N.E.2d 1118, 1128 (2002) ("imposing a duty to warn here would not have intruded Wal–Mart into the doctor-patient relationship.").

BNSF argues that *Cruz v. Texaco* is directly on point here. 589 F. Supp. 777, 779 (S.D. Ill. 1984) (granting summary judgment in favor of defendant where operating a winch truck was a complex procedure that involved specific training, defendant was entitled to rely on plaintiff's employer about warning on the inherent dangers of operating truck). Plaintiff argues this case is distinguishable. Providing all reasonable inferences in favor of Plaintiff, the Court agrees with Plaintiff. The court in *Cruz* found that such a procedure regarding harm of using the truck was complex and was properly relegated to the employer. *Id*. Here, while the Court agrees the training and supervision is properly relegated to U.S. Steel, a warning here against GOOME affixed on the train is not complex.

BNSF argues no duty to warn should exist "since a purpose of a warning is to apprise a party of a danger of which he was not aware" and U.S. Steel was aware of the danger of GOOME. However, the *Cruz* court relied upon evidence in the record that the employer in that case was

15

"knowledgeable about how to use winch trucks and he fully understood the danger of driving a loaded truck at highway speeds." *Id*. at 779. Here, this fact as to whether or not U.S. Steel was properly aware of the risk of GOOME is in dispute as it relates to duty to warn.[5]

Additionally, BNSF cites cases where an employer (here, U.S. Steel) is properly the liable party and is the proper "warner" because the risk was obvious. *French v. Barber-Greene Co*., 215 Ill. App. 3d 1025, 1029, 576 N.E.2d 193, 196 (1991) ("Because any danger from the lack of restraints on the paver was open and obvious to decedent, and the employer did not have any more knowledge of that danger than did the employee, Monarch had no duty to warn him of the danger of falling off of it."). Here, the record is in dispute as to whether or not GOOME risk was obvious. *Fuller v. Fend–All Co*., 70 Ill.App.3d 634, 388 N.E.2d 964, 968 (1979) (summary judgment is improper where the obviousness of the danger is disputed in the record).

Here, the Court, providing all reasonable inferences in favor of Plaintiff, cannot say that BNSF owes no duty as a matter of law regarding a duty to warn or provide anti-slip materials.

**d. Premises Liability**

In its response, Plaintiff argues that BNSF owed a duty to decedent because BNSF was a premises owner, i.e., one of the special relationships that confers a duty on BNSF towards decedent. (Doc. 132 at 16). Alternatively, Plaintiff argues BNSF owed a duty "as a possessor of land who holds it open to the public." *Id*. at 16. BNSF replies and argues that this is incorrect, and the accident occurred on U.S. Steel premises. (Doc. 139 at 3). The Court agrees with BNSF. For liability to attach to BNSF, it must possess and control the real property on which the injury occurred. *Simich v. Edgewater Beach Apartments Corp*., 368 Ill. App. 3d 394, 406, 857 N.E.2d 934, 943 (2006).

---

[5] While this Court above found this fact was not material to its analysis regarding the duty to supervise and train, it is material regarding the duty to warn or provide anti-slip devices.

BNSF did not control U.S. Steel premises where the accident occurred. BNSF simply furnished the railcar to U.S. Steel. BNSF had no "special relationship" that confers a duty between BNSF and decedent for being a premises owner.

### e. Causation

BNSF also argues that there is no evidence in the record that BNSF's negligence was the proximate cause of decedent's injuries. (Doc. 122 at 19-20). Specifically, BNSF argues that Dr. Andres even states "there are several different things that could contribute" to Dagon slipping or otherwise falling from the railcar, and that it would be "speculative" to try to "state a conclusion" about how the accident happened." *Id*.

The issue of proximate cause in a negligence action is generally an issue of material fact to be decided by the trier of fact; however, if the facts as alleged show that the plaintiff would never be entitled to recover, proximate cause can be determined by a court as a matter of law. *Abrams v. City of Chicago*, 211 Ill.2d 251, 257–58, 285 Ill.Dec. 183, 811 N.E.2d 670 (2004). Under Illinois law, the "term 'proximate cause' describes two distinct requirements: cause in fact and legal cause, which is a policy decision that limits how far a defendant's legal responsibility should be extended for conduct that, in fact, caused the harm." *Dux v. United States*, 69 F. Supp. 3d 781, 786–87 (N.D. Ill. 2014) (citing *Lee v. Chi. Transit Auth*., 152 Ill.2d 432, 178 Ill.Dec. 699, 605 N.E.2d 493, 502 (1992)); *Jutzi–Johnson v. United States*, 263 F.3d 753, 755 (7th Cir. 2001).

"Cause in fact exists where there is a reasonable certainty that a defendant's acts caused the plaintiff's injury." *Krywin v. Chi. Transit Auth*., 238 Ill.2d 215, 345 Ill.Dec. 1, 938 N.E.2d 440, 446–47 (2010) (citations omitted). Illinois courts generally employ either the "but for" test or the "substantial factor" test when evaluating cause in fact. *Turcios v. DeBruler Co*., 392 Ill.Dec. 541, 32 N.E.3d 1117, 1124 (Ill. 2015). A defendant's conduct under the "but for" test, "is not the cause

17

of an event if the event would have occurred without it." *Id*. Under the "substantial factor" test, "the defendant's conduct is said to be a cause of an event if it was a material element and a substantial factor in bringing the event about." *Id*. Here, BNSF must show that either, no material dispute exists that its failure to warn regarding GOOME or to provide anti-slip material was not the "but for" cause or was not a "substantial factor" in bringing about the event.

"Legal cause is essentially a question of foreseeability: a negligent act is a proximate cause of an injury if the injury is of a type which a reasonable man would see as a likely result of his conduct." *Dux*, 69 F. Supp. 3d at 787 (citing *Lee*, 178 Ill.Dec. 699, 605 N.E.2d at 503). Illinois courts have held that whether an injury is "reasonably foreseeable is an objective test, not a subjective one." *Stanphill v. Ortberg*, 432 Ill.Dec. 624, 129 N.E.3d 1167, 1177 (Ill. 2018). "A proximate cause is one that produces an injury through a natural and continuous sequence of events unbroken by an effective intervening cause." *Dux*, 69 F. Supp. 3d. at 787 (quoting *Crumpton v. Walgreen Co*., 375 Ill.App.3d 73, 313 Ill.Dec. 178, 871 N.E.2d 905, 910 (2007)). "The occurrence of an accident does not support an inference of negligence, and, absent positive and affirmative proof of causation, plaintiff cannot sustain the burden of establishing the existence of a genuine issue of material fact." *Kellman v. Twin Orchard Country Club*, 202 Ill.App.3d 968, 974, 148 Ill.Dec. 291, 560 N.E.2d 888 (1990). Liability cannot be predicated on conjecture; rather proximate cause is established when there is reasonable certainty that the defendant's acts or omissions caused the injury. *Kimbrough v. Jewel*, Cos., 92 Ill.App.3d 813, 817, 48 Ill.Dec. 297, 416 N.E.2d 328 (1981).

Here, the Court finds it cannot say, as a matter of law that BNSF's alleged conduct regarding failure to provide anti-slip material was not the proximate cause of decedent's injuries. Specifically, here, there is a video of the accident. (Doc. 127 at 3). After decedent's fall, he was

able to communicate with paramedics. Decedent told the paramedic that he fell after he stepped up on the train while he was moving, and "then I went to grab the handle. I slipped and fell backwards and then I got hit." (Doc. 122 at 10). Dr. Andres, Plaintiff's expert, indicated that there were two scenarios of what occurred – "either Mr. Dagon attempted to mount one of the coke hopper cars while it was moving, but in the process his foot slipped off the sill step, or Mr. Dagon had successfully mounted the moving railcar, but his foot or feet slipped off the sill step as he was riding the railcar." (Doc. 122-13 at 16). Additionally, Dr. Andres stated in his deposition that "sill steps are slippery" and are "plain steel" or "sometimes painted steel." (Doc. 122-14); (Andres dep. at 31:20-23).

The Court finds that the evidence in the record, specifically from decedent's statements and Dr. Andres' testimony, shows a genuine dispute as whether BNSF's failure to provide anti-skid material may have been a substantial factor in causing this accident. Additionally, BNSF has not met its burden that there is no material dispute to show if there was no anti-skid material, decedent would not have been harmed. Additionally, there is evidence in the record that BNSF has studied and has been aware of the dangers of GOOME. Using the objective standard, BNSF has not met its burden that no reasonable man would determine that not having anti-skid material would not cause decedent's harm. Said another way, providing all reasonable inferences in favor of Plaintiff, there is a genuine dispute of material fact whether a reasonable man could see that having anti-skid surfaces likely was a foreseeable cause of decedent's injuries.

BNSF argues, in a footnote in its reply, that federal regulations do not require sill steps on hopper cars to have "anti-skid" surfaces because of a deliberate decision. (Doc. 139 at 5); 49 C.F.R. 231.2 and 231.1(d). However, at this point, with the briefing provided, the Court cannot say, per regulations, an anti-skid surfaces absolves BNSF of negligence. BNSF has not provided the Court,

and Plaintiff has not had a chance to brief the Court on the issue. *See e.g. Am. River Transp. Co. v. Phelps*, 189 F. Supp. 2d 835, 851 (S.D. Ill. 2001) (finding testimony at trial regarding custom and usage demonstrated use of non-skid paint was not standard practice and was nearly impossible on a barge deck in bad weather conditions where anti-skid paint); *Kurpiel v. Calumet River Fleeting*, 691 F. Supp. 2d 827, 833 (N.D. Ill. 2010) (finding sworn affidavit and documents that anti-skid paint was applied and not mandatory under Coast Guard regulations showed the vessel was in satisfactory condition); *American River Transportation Co. v. Phelps*, 189 F.Supp.2d 835, 852 (S.D. Ill. 2001) (finding that custom and practice showed that non-skid paint was not required and, accordingly, the failure to apply non-skid paint to the deck of a barge did not constitute negligence nor render the barge unseaworthy).

Regarding the failure to warn, the Court finds there is too much speculation as to whether failure to provide a warning was the proximate cause of this accident. The mere possibility of a causal connection is not sufficient to sustain the burden of proof of proximate cause; the causal connection must not be contingent, speculative, or merely possible. *Krivanec v. Abramowitz*, 366 Ill. App. 3d 350, 851 N.E.2d 849 (2006). Here, while there is evidence in the record Dr. Andres indicated a warning would have been useful and an additional warning that was outside the rules or training U.S. Steel provided, the Court finds this evidence speculative. Dr. Andres states "[i]t's a different warning. It's a warning that's right at the point of operation as opposed to a rule that, you know, you talk about when you're not doing the task. This is a warning that's present at the point of the task performance." Doc. 122-14, Andres dep. at 55:12-16. *See also id*. at 56:1-5 ("Again, it's just context, that's the only difference. You could have the exact same words in a rule book and the exact same words on the car, but because of where they're located, the context is different."). Even giving Plaintiff all reasonable inferences, Dr. Andres' statements do not rise to

the level to show this Court warning could have prevented decedent's harms. Plaintiff does not show how a warning was the "but for" or substantial factor in bringing about this harm. Regarding reasonable foreseeability in the section regarding duty above, the Court found above that a warning was reasonably foreseeable (after finding all four factors weighed in favor of Plaintiff), the Court finds that Plaintiff provides insufficient and speculative evidence that a warning was the cause-in-fact of decedent's accident. All that Dr. Andres provides is that a warning would have been useful. Defendant has met its burden to show no reasonable juror would find a failure to provide a warning was a proximate cause of decedent's accident. Plaintiff's proffered evidence are supported by speculation and conjecture, which cannot defeat summary judgment.

With the arguments provided in the parties' briefing, and providing all reasonable inferences in favor of Plaintiff, the Court finds that BNSF has not met its burden to show that there is no material dispute regarding proximate causation as to failure to provide anti-slip material. The Court notes that issue of proximate cause in a negligence action is generally an issue of material fact to be decided by the trier of fact and the facts do not show that "plaintiff would never be entitled to recover." *Abrams v. City of Chicago*, 211 Ill.2d 251, 257–58, 285 Ill.Dec. 183, 811 N.E.2d 670 (2004). However, the Court finds no reasonable juror could find that a failure to warn was the proximate cause of this accident.

### III. Conclusion

The Court finds BNSF did not meet its burden to show there is no material dispute as to the duty to warn or provide anti-slip devices. Additionally, BNSF did not meet its burden to show there is no material dispute as to proximate causation on the failure to provide anti-slip devices. BNSF did meet its burden to show there was no material dispute as to proximate causation on the failure to provide a warning. Based on these reasons, the Court **DENIES IN PART and GRANTS**

**IN PART** BNSF's Motion for Summary Judgment (Doc. 121).


**IT IS SO ORDERED.**
**Dated: September 1, 2022**

**/s/ J. Phil Gilbert**
**J. PHIL GILBERT**
**DISTRICT JUDGE**
